* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission modifies in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to the Workers' Compensation Act.
2. In I.C. No. 361264, plaintiff alleges that she contracted an occupational disease of the upper extremities on December 1, 2001. Defendants denied this claim.
3. In I.C. No. 361255, plaintiff alleges she sustained back and knee injuries on February 20, 2003. Defendants accepted this claim as a medical only claim involving a back sprain but denied the compensability of a knee injury. Defendants deny that any disability resulted from this claim.
4. In I.C. No. 505109, plaintiff alleges she sustained back injuries on May 7, 2003. Defendants denied this claim.
5. An employer-employee relationship existed between plaintiff and defendant-employer on December 1, 2001, February 20, 2003, and May 7, 2003.
6. American Home Assurance Company was the carrier on the risk on December 1, 2001, February 20, 2003, and May 7, 2003.
7. Plaintiff's average weekly wage as of February 20, 2003 was $347.32 per week.
8. The parties stipulated into evidence the following at the hearing before the Deputy Commissioner:
 a. Medical records and reports.
 b. Industrial Commission forms and filings.
 c. Discovery responses.
 d. Plaintiff's personnel file.
9. Following the Deputy Commissioner's hearing, defendants submitted two exhibits by letter dated August 1, 2005, and Forms 22 by letter dated November 3, 2005, all of which were received into evidence.
10. The Pre-Trial Agreement dated March 10, 2005, which was submitted by the parties, is incorporated by reference.
11. The issues before the Commission are whether plaintiff sustained a compensable occupational disease and/or injuries by accident in I.C. No. 361264, I.C. No. 361255, and I.C. No. 505109 and, if so, to what benefits is plaintiff entitled; and whether plaintiff's claim in I.C. No. 505109 is barred by plaintiff's failure to give timely written notice to defendant-employer.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 51 years old. Plaintiff is a high school graduate and began working for defendant-employer on November 24, 1997 as a stocker. Her job duties involved taking merchandise to a designated area of the store, opening the boxes and placing individual items in the proper places on the shelves. Plaintiff worked the night shift, which started at 10:00 p.m. At the beginning of the shift, the store's assistant manager met with the stockers and specified the area where each employee would work. The stockers worked together to shelve items from approximately 1,400 to 3,500 or more boxes every night. Plaintiff used a box cutter to open a taped box. If the box was glued shut, she pulled the flaps apart manually. If plaintiff opened many glued boxes, the palms of her hands often bothered her by the end of her work shift.
2. During the late 1990's, plaintiff developed pain and numbness in her left hand. On February 20, 2001, plaintiff went to Dr. William Pekman, an orthopedic hand surgeon, because the symptoms in her left hand were interfering with work and sleep, and she was beginning to have similar symptoms in her right hand. Dr. Pekman diagnosed plaintiff with flexor tenosynovitis of the left long finger and carpal tunnel syndrome. Nerve testing confirmed that plaintiff had severe bilateral carpal tunnel syndrome, in addition to ulnar nerve compression in the left elbow. On December 5, 2001, Dr. Peckman performed surgery to plaintiff's right hand and, on December 26, 2001, he operated on her left hand and arm. Plaintiff's symptoms improved significantly as a result of the operations.
3. The greater weight of the medical evidence fails to establish that plaintiff was placed at an increased risk of developing carpal tunnel syndrome from her work activities as compared to the general public equally exposed. Plaintiff did not prove that her work duties were a significant contributing factor in the development of her carpal tunnel syndrome. Thus, based on the greater weight of the medical evidence, plaintiff's bilateral carpal tunnel syndrome was not an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant and which excluded all ordinary diseases of life to which the general public was equally exposed.
4. Plaintiff returned to work for defendant-employer on approximately April 1, 2002 and continued to work as a stocker until February 20, 2003. During her employment with defendant-employer, plaintiff worked with apparel, or "soft lines," and general merchandise, or "hard lines." The store's assistant manager designated where plaintiff worked; however, plaintiff's assignment was subject to change at any time.
5. On February 20, 2003, the assistant manager assigned plaintiff to work in the sporting goods department, although she had been working in soft lines for the previous few weeks. Plaintiff had to place a weight set, which weighed 120 pounds, on a shelf and a co-worker agreed to help her lift it. Plaintiff took one end of the box and her co-worker took the other. Plaintiff squatted and bent over to lift the weight set and felt an aching pain in her low back. Plaintiff and her co-worker carried the box to the shelf, where plaintiff again squatted and bent over to push it into the rack. As plaintiff continued working after shelving the weights, she noticed that her backache persisted and that her left knee popped whenever she squatted.
6. Plaintiff worked the rest of her shift and did not report an injury that day. When plaintiff woke up the next day, her knee was swollen and painful and her back still ached. That night, plaintiff told Lisa, the store co-manager, that she thought she was injured. Since it was Saturday and the doctor's office was not open, no arrangements were made for medical treatment until Monday, February 24, 2003, when plaintiff was sent to Hart Industrial Clinic. Dr. Hart examined plaintiff and diagnosed left knee strain and back strain. He restricted plaintiff to light-duty work and gave her medication and a knee sleeve.
7. During the next six weeks, plaintiff returned to the Hart Clinic multiple times and was treated with medication, physical therapy and work restrictions. On March 14, 2003, Dr. Jay Piland noted plaintiff's complaints of intermittent bilateral leg pain, with no radicular pain. Dr. Piland also noted that plaintiff's left knee was still popping, for which he suggested she could wear a splint. By March 25, 2003, Dr. Piland concluded that plaintiff was having some radicular symptoms in her left leg, in addition to those associated only with her knee problem. By April 4, 2003, plaintiff's symptoms improved. Dr. Piland released her to return to regular duty work and told plaintiff that she did not need to return for treatment unless she developed further problems.
8. When Dr. Piland released plaintiff, she continued to have minimal back and leg pain, but she considered the pain manageable. While on light-duty, plaintiff performed less strenuous work, but returned to her normal job as a stocker once she was released to full-duty work.
9. On or about May 7, 2003, plaintiff was working in the household chemicals department, where she handled boxes of bleach, detergent and similar items. When plaintiff stood up after putting down a case of chemicals, she experienced a sharp shooting pain across her back and down her left leg to her foot. Plaintiff assumed that the symptoms were caused by her February 20, 2003 injury. Plaintiff called defendants' adjuster to ask if she could go see a chiropractor instead of the Hart Clinic. The adjuster did not authorize chiropractic treatment, but did approve plaintiff's return to the Hart Clinic.
10. On May 21, 2003, Dr. Piland examined plaintiff and ordered an MRI, which revealed a large central disc herniation at L4-5 with severe spinal stenosis. At her next appointment on June 9, 2003, plaintiff continued to have numbness, tingling and pain in her left leg. Dr. Piland referred plaintiff to Dr. Alfred Geissele, an orthopedic spine surgeon.
11. On June 13, 2003, Dr. Geissele evaluated plaintiff for both her back and knee symptoms. He advised her regarding treatment options for the ruptured disc, including surgery and epidural steroid injections, and recommended an MRI of her left knee. Defendants, who were paying for plaintiff's medical treatment, refused to authorize the knee MRI. Plaintiff wanted to try epidural steroid injections before back surgery, but defendants refused to approve that treatment.
12. At his deposition, Dr. Geissele stated that plaintiff's back and knee conditions resulted from the injuries she sustained on February 20, 2003 and May 7, 2003. Dr. Geissele also felt that although the May 7, 2003 incident could have been the sole cause of plaintiff's back condition, he could not ignore plaintiff's radicular leg pain before the May injury and stated that plaintiff's February 20, 2003 injury did not completely resolve prior to her May 7, 2003 injury.
13. On August 4, 2003, defendants' adjuster, Sandra Shiers, took a recorded statement from plaintiff. During the interview, plaintiff described both the February 20, 2003 incident, as well as the May 7, 2003 incident, although she did not know what date the second incident occurred. Plaintiff told Ms. Shiers that she did not report the May 7, 2003 incident because she felt it was not a second injury since she was already experiencing back and leg pain prior to the incident. According to Ms. Shiers, a note in the file stated that plaintiff called Hazel, another adjuster, on May 15, 2003. At some point after plaintiff's interview with Ms. Shiers, defendants denied plaintiff further benefits.
14. Because of the problems obtaining authorization for treatment, on August 14, 2003, plaintiff went to her family doctor, Dr. John Earl. She complained of chronic left sciatic pain and severe left knee pain. As of August 14, 2003, Dr. Earl took plaintiff out of work, ordered an MRI for her knee and prescribed medication. Dr. Geissele saw plaintiff on September 3, 2003. By that time, she had developed increased pain and weakness in both legs, which she stated felt like they were going to buckle. Dr. Geissele agreed with Dr. Earl that plaintiff should not work.
15. During the next several months, plaintiff was unable to receive medical treatment due to financial problems and because defendants denied her claim. Plaintiff was ultimately able to obtain sponsorship by the North Carolina Division of Vocational Rehabilitation and, on February 20, 2004, returned to Dr. Geissele. Dr. Geissele recommended surgery and, at plaintiff's request, referred plaintiff to Dr. Samuel Chewning, an orthopedic spine surgeon, for a second opinion.
16. By the time Dr. Chewning examined plaintiff on May 5, 2004, plaintiff was experiencing severe leg and back pain. The pain went into both legs, left somewhat greater than right. A recent lumbar MRI revealed a disc herniation that had almost completely obstructed the spinal canal. Dr. Chewning advised plaintiff that her condition had progressed to the point that she required surgery on an urgent basis. Dr. Chewning also advised plaintiff that the surgery involved additional risks, and that due to the loss of so much disc material, plaintiff might require a fusion in the future.
17. On May 13, 2004, Dr. Chewning performed surgery to decompress the L4-5 interspace. Plaintiff's condition significantly improved as a result of the operation. Dr. Chewning released plaintiff to return to light-duty work on June 17, 2004 and, on July 19, 2004, allowed her to go back to medium-level work with respect to her back. By that time, however, plaintiff obtained sponsorship from state Vocational Rehabilitation for treatment for her knee problems with Dr. Stephen Sladicka, another orthopedic surgeon.
18. On July 15, 2004, Dr. Sladicka examined plaintiff and reviewed her knee MRI, which was consistent with a medial meniscus tear. Dr. Sladicka felt plaintiff was capable of light-duty, sedentary work at that time. On August 24, 2004, Dr. Sladicka performed arthroscopic surgery to remove the torn cartilage. Following the knee operation, plaintiff underwent physical therapy and recovered within approximately four weeks. As of November 22, 2004, Dr. Sladicka released plaintiff to return to work with respect to her knee.
19. In August 2004, plaintiff continued to experience increased back and radicular leg pain. On August 25, 2004, plaintiff returned to Dr. Chewning, who placed her on a steroid anti-inflammatory dose pack and ordered a lumbar MRI. The test revealed collapse of the L4-5 disc space, which Dr. Chewning predicted when he first saw plaintiff in May 2004, before her back operation. Plaintiff's symptoms continued to worsen, and Dr. Chewning performed surgery on January 18, 2005 to decompress and fuse the interspace. Plaintiff was still recovering from surgery when Dr. Chewning's deposition was taken on June 6, 2005. Dr. Chewning testified that plaintiff's expected recovery period was nine to 18 months, due to the extensive nature of the operation.
20. Dr. Chewning further testified that the May 13, 2004 decompression and the January 18, 2005 fusion surgery were both at the same level and due to the same initial problem. Dr. Chewning believed that plaintiff's February 20, 2003 injury was the most likely source for her disc injury. However, he was unable to apportion the contributions of the February 20, 2003 and the May 7, 2003 injuries to plaintiff's disc pathology.
21. The Commission finds that on February 20, 2003, plaintiff sustained a specific traumatic incident of the work assigned when she squatted to lift a heavy weight set and placed it on a shelf. Plaintiff sustained an injury to her low back, which caused damage to the L4-5 disc.
22. However, plaintiff failed to prove that there was anything unusual or out of the ordinary which occurred on February 20, 2003 when she handled the weight set. She had worked with hard line merchandise throughout her employment and had been required to lift heavy merchandise as part of her normal job duties. Although plaintiff sustained an injury to her left knee as a result of lifting and moving the weight set on February 20, 2003, and although the injury arose out of and in the course of her employment, the injury did not occur as a result of an accident.
23. Due to the back injury on February 20, 2003, plaintiff was unable to perform her regular job duties from February 24, 2003 until April 4, 2003. Defendant-employer provided plaintiff with light-duty work suitable to her capacity during that period. Consequently, plaintiff continued earning her regular wages. In April 2003, plaintiff resumed her normal job duties.
24. On or about May 7, 2003, plaintiff sustained another specific traumatic incident of the work assigned when she stood up after putting down a case of household chemicals and felt a sharp pain in her low back and down her left leg. Although plaintiff did not consider this to be a new injury, the greater weight of the medical evidence establishes that the incident was an aggravating factor with respect to her herniated disc. Plaintiff sustained a back injury as a result of the specific traumatic incident on May 7, 2003.
25. Since plaintiff thought her symptoms in May 2003 were due to her February 2003 injury, she did not report a new injury to her employer in May 2003. However, plaintiff did report her increased symptoms to defendant-employer and to the insurance adjuster, and asked for more medical treatment. Defendants authorized plaintiff to return to the doctor and they directed her medical treatment until the adjuster took a recorded statement from plaintiff in August 2003 in which she discussed the second incident. Defendants also received notice of the incident from Dr. Piland's May 21, 2003 notes, in which he referred to the May 7, 2003 incident.
26. Plaintiff had reasonable excuse for failing to give written notice of the incident on May 7, 2003 since she injured her back under compensable circumstances on February 20, 2003 and her symptoms did not completely resolve. Even plaintiff's doctors considered the first injury to be at least part of the cause of her continuing problems. Thus, it was reasonable for plaintiff to think that her condition in May 2003 resulted from the February 20, 2003 injury. Defendants did not inquire about the second incident and the cause of plaintiff's increased symptoms. As of August 2003, defendants had actual notice of plaintiff's May 7, 2003 incident. Defendants failed to show that they were prejudiced by the delay in receiving written notice of plaintiff's injury by accident.
27. Plaintiff's severely herniated disc at L4-5 was due to both the February 20, 2003 and the May 7, 2003 injuries at work. Based on the greater weight of the medical evidence, the Commission finds that the relative contribution of each injury cannot be apportioned.
28. Due to the back injuries giving rise to these claims, plaintiff was unable to work and earn wages in any employment beginning August 14, 2003. After her first back surgery, Dr. Chewning released plaintiff as of June 17, 2004, to light duty work with a temporary 15-pound lifting restriction. Plaintiff did not look for work until October 14, 2004, after which she made reasonable but unsuccessful efforts to find suitable employment. After January 18, 2005 when the back fusion was performed, plaintiff remained totally disabled from any employment until the date of the Deputy Commissioner's hearing and continuing.
29. Plaintiff's fusion surgery on January 18, 2005 was a direct and natural result of the injuries plaintiff sustained at work on February 20, 2003 and May 7, 2003. Plaintiff had not reached maximum medical improvement from her fusion surgery as of the date of Dr. Chewning's deposition.
30. Defendants have not defended this action without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. (I.C. No. 361255) On February 20, 2003, plaintiff sustained an injury by accident to her back arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2 (6).
2. (I.C. No. 505109) On May 7, 2003, plaintiff sustained an injury by accident to her back arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2 (6).
3. An employee shall not receive compensation unless she gives the employer written notice within 30 days of the accident occurring, unless reasonable excuse is made and the employer is not prejudiced by the delay. N.C. Gen. Stat. § 97-22. In plaintiff's claim under I.C. No. 505109, she had a reasonable excuse for the delay in reporting her injury and defendants had actual knowledge of her injury through their adjuster and plaintiff's medical records. Defendants were not prejudiced by the delay in receiving written notice. Thus, plaintiff's claim is not barred by her failure to give written notice of her May 7, 2003 injury to her employer within 30 days. Id.
4. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id.
5. In the case at bar, the greater weight of the medical evidence establishes that plaintiff's back condition after May 2003 was directly and causally related to her injury by accident in the form of a specific traumatic incident on February 20, 2003. As such, the Parsons
presumption applies and defendants failed to rebut the presumption that the medical treatment is directly related to the compensable injury.Parsons v. Pantry, Inc., supra.
6. The herniated disc for which plaintiff was treated beginning in May 2003 was a proximate result of both injuries on February 20, 2003 and May 7, 2003, and the relative contribution of each injury cannot not be apportioned. Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389
(1980).
7. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
8. As a result of the compensable injuries by accident on February 20, 2003 and May 7, 2003, the medical evidence showed that plaintiff was totally disabled from any employment and is entitled to compensation for temporary total disability compensation at the rate of $231.55 per week from August 14, 2003 until her release to return to light duty work on June 17, 2004. Between June 18, 2004 and October 13, 2004, plaintiff did not meet her burden to prove that she was unable to obtain employment after a reasonable effort or that it was futile for her to seek employment because of other factors. She was capable of some work and no doctor took her out of work for her compensable back injury. Beginning October 14, 2004, plaintiff did make a reasonable job search and thereafter became totally disabled after her back surgery on January 18, 2005. Plaintiff is therefore entitled to resumption by defendants of payment of total disability compensation at the rate of $231.55 per week beginning October 14, 2004 and continuing until she returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to payment by defendants of all medical expenses for treatment of her back incurred or to be incurred as a result of the injuries by accident, including ongoing treatment by Dr. Chewning, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-19; 97-25.
10. Except for back injuries and hernias, in order for an injury to be compensable under the North Carolina Workers' Compensation Act, it must be the result of an accident. N.C. Gen. Stat. § 97-2(6). An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E. 2d 109 (1963).
11. With respect to I.C. No. 361255, plaintiff did not sustain an injury by accident to her knee arising out of and in the course of her employment with defendant-employer on February 20, 2003. Thus, plaintiff is not entitled to benefits under the Workers' Compensation Act for the knee injury she sustained on February 20, 2003. N.C. Gen. Stat. § 97-2
(6).
12. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment." Booker v. Medical Center,297 N.C. 458, 468; 256 S.E. 2d 189, 196 (1979). The claimant bears the burden of proving the existence of an occupational disease. Gay v.J.P. Stevens Co., 79 N.C. App. 324, 331, 339 S.E. 2d 490,494 (1986).
13. With respect to I.C. No. 361264, plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which excludes all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center,supra. Thus, plaintiff is not entitled to benefits under the Workers' Compensation Act for her bilateral carpal tunnel syndrome. N.C. Gen. Stat. § 97-2 et seq.
14. The defense of these claims was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Subject to the attorney's fee awarded below, defendants shall pay compensation to plaintiff for temporary total disability at the rate of $231.55 per week from August 14, 2003 until June 17, 2004 and from October 14, 2004 and continuing until she returns to work or until further Order of the Commission. That portion of this compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her specific traumatic incidents to her back, including ongoing treatment by Dr. Chewning, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. Defendants shall insure that the Division of Vocational Rehabilitation has been reimbursed for medical expenses associated with plaintiff's compensable back condition.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. Defendants shall deduct and pay the fee from the accrued compensation and shall thereafter pay every fourth compensation check directly to plaintiff's counsel.
4. (I.C. No. 361255) Plaintiff's claim for workers' compensation benefits for her knee injury is hereby DENIED.
5. (I.C. No. 361264) Plaintiff's claim for workers' compensation benefits for her bilateral carpal tunnel syndrome is hereby DENIED.
6. Defendants shall pay the costs.
This 10th day of October 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ PAMELA T. YOUNG COMMISSIONER